# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

ODELL BUSH,

    Petitioner,

vs.

                                              CASE NO. 4:04cv399-RH/WCS

JAMES CROSBY,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

    This is an amended petition for writ of habeas corpus filed by Odell Bush pursuant to 28 U.S.C. § 2254. Doc. 6. Petitioner challenges his conviction after a jury trial for attempted first degree murder with a firearm, retaliating against a witness with a firearm, shooting into an occupied vehicle, and possession of a firearm by a convicted felon. The convictions were in the Circuit Court of the Second Judicial Circuit, in and for Gadsden County, Florida, case number 97-335-CFA.

    Respondent filed an answer and portions of the state record, conceding that the petition was timely filed. Doc. 10. Respondent represented that the trial transcript was filed as exhibit B, but that exhibit is only the transcript of jury selection. The trial

transcript is not in this record. It does not, however, appear that the transcript is needed as the trial record is fully summarized in Petitioner's initial brief on direct appeal. Doc. 10, ex. D. Petitioner filed a traverse, doc. 11.

**Trial Evidence**

The shooting took place on May 1, 1997. The victim, Willie James Byrd, testified that on April 24, 1997, Anthony Price, Petitioner's brother, drove by Byrd's trailer and Price accused Byrd of "snitching on the man," identifying the "man" as Derrick James. Doc. 10, ex. D (initial brief on appeal), p. 2; ex. E (answer brief), p. 15. Shortly thereafter, Petitioner drove by in a Pontiac 6000; there was a police car behind him and Petitioner kept on going without stopping. *Id.*, ex. D, p. 3. Shortly after that, Price and Petitioner walked up to Byrd's house and Price said "I told you, . . . they was gonna get you." *Id.* While this confrontation was going on, Sergeant Ezell Hall of the Gretna Police Department walked up and at the request of Byrd, told Price and Petitioner to leave. *Id.* Byrd heard Petitioner say to Price: "Don't worry about it. We'll get him later." *Id.*

Byrd testified that on November 26, 1996, he overheard Derrick James say he was going to kill someone as he walked past Byrd's car at the Prestige Lounge. *Id.*, ex. D, p. 3. In December, 1996, Byrd gave an audiotaped statement of what he knew to the police. *Id.*, p. 4. Murder charges were brought against James. On April 9, 1997, in a bond hearing for Derrick James, the State played the audiotape of what Byrd had said in December. *Id.* After argument, the trial court overruled Petitioner's objections and allowed this tape to be played to Petitioner's jury. *Id.*, pp. 4-6. On the audiotape, Byrd

said he saw James pull out a handgun, say he was going to kill that "mother f-----," and heard shots fired. *Id.*, p. 6.

Byrd also testified that on the day of the shooting, May 1, 1996, he went home after work. Doc. 10, ex. D, p. 7. He said on his way out of the door of his trailer, he saw a blue Pontiac 6000 drive slowly into the trailer park. *Id.* He said that Petitioner, Anthony Price, and someone else were in it. *Id.* He said that "they" asked him "what's up now?"

Byrd said that he felt that trouble was coming, so he drove his car to the home of his cousin, Marcus Russ, less than a mile away. *Id.* Russ got into the car with Byrd. *Id.*

> Before Byrd got to the railroad tracks, [Petitioner] crossed the tracks before Byrd did and turned on Canty Lane, a dirt road. Byrd then pulled behind Bush. At this point Byrd and Marcus got out of the car. Marcus was asking what was going on. Byrd told Marcus to watch his back because at that time [Petitioner] and Price had got [sic] out of their car. Price started asking, "What's up now" and "The police ain't around no more." Byrd testified that he said, "man, I ain't going on with that." [I:44-45]
>
> At that time, approximately five feet from Byrd, [Petitioner] pulled out a .38 revolver and said, "are you ready to die?" and shot Byrd in the chest. [I:47]

*Id.*, pp. 7-8. Petitioner then shot Byrd in the face as he entered the car. *Id.*, p. 8. Petitioner continued to shoot into the car. *Id.*, p. 11. The shooting occurred at about 8:00 p.m. *Id.*, ex. E, p. 6.

Petitioner sought to present an alibi defense. His employer testified that his time card for May 1, 1996, showed that he began work at 7:50 a.m. and worked until 6:35 p.m. *Id.*, ex. D, p. 15. Petitioner's girlfriend, Shavonda Davis, said she picked Petitioner up from work at about 6:30 p.m., arriving at home at about 7:00 p.m. and cooked dinner, and Petitioner sat for awhile and took a bath. *Id.* Davis said that Petitioner's sister,

Theresa Williams called and said she needed "the car."  *Id.*  Davis said she fed her children and then took the car to Williams.  *Id.*  She said that this took about 30 minutes, and then Williams left with the car.  *Id.*  Davis testified that she and Petitioner watched television and neither left the house that night.  *Id.*

Theresa Williams testified that she got the car from Davis at about eight or nine p.m. that night, and had the car "for the rest of the evening."  *Id.*, p. 16.  She said that at about eleven or twelve that night, the police stopped her and took the car from her.  *Id.*  On cross examination, she denied telling Sergeant Hall that she had had the car for about an hour, and said she said she had it a "few hours."  *Id.*, ex. E, p. 6.

In rebuttal, Sergeant Hall testified that Williams had told him that she had had the car for 45 minutes before she was stopped.  *Id.*, ex. D, p. 16.  He said that Williams had been stopped at 12.30 a.m. the next morning.  *Id.*, ex. E, p. 6.

**Section 2254 Standard of Review**

Petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146 L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).  "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings of the Supreme Court, but decisions of lower federal courts may be considered to the extent

that they demonstrate how those courts applied Supreme Court precedent. Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.

The law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984). Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850. Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. Petitioner has a heavy burden to establish the deficient performance prong of Strickland, by showing that "no competent counsel would have taken the action that his counsel did take." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). There are no rigid requirements, or absolute duty to investigate a particular line of defense. *Id.*

> Indeed, "[c]onsidering the realities of the courtroom, more is not always better. Stacking defenses can hurt a case. Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."

261 F.3d at 121 (citations omitted).

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068.

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S.Ct. at 2069. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

If the state court identifies and applies the framework of Strickland in assessing an ineffective assistance claim, its adjudication does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently. Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852. To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . . Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing*

Williams).  "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One:**     **Whether Petitioner was denied due process when the trial court refused to let him call a witness in surrebuttal**

After the State presented evidence in rebuttal from Sergeant Hall (that Williams had said she had had the car for only about 45 minutes before being stopped), Petitioner's attorney asked for permission to call a witness in surrebuttal.  Doc. 6, p. 4A. Petitioner's attorney said that he had just been made aware of the witness.  The court denied the request, stating "we don't have surrebuttal."  *Id.*  Petitioner contends that this denied him a right to put on a defense in violation of due process.[1]

Respondent concedes that Petitioner exhausted his state court remedies as to this claim, and the court should address the merits of the claim.[2]  Respondent argues that Petitioner has presented only a state law claim "couched" in federal constitutional law terms.

Respondent's argument is not persuasive.  Petitioner has alleged that he was denied the right to present evidence in defense and he contended that this has denied him federal due process.  In the memorandum attached to the petition, Petitioner cites Sadler v. State, 509 So. 2d 1139 (Fla. 5th DCA 1987), a case that found that exclusion

---

[1] He also alleges a violation of his right to a jury trial and denial of equal protection of the law, but the claim is a denial of a fair trial in violation of due process.

[2] Despite this concession, it does not appear that Petitioner exhausted state court remedies as to his federal claim.  The argument Petitioner made on appeal was based entirely upon state law (the discretion of the trial court) and did not mention the federal constitution.  Doc. 10, ex. C (initial brief on appeal), pp. 20-22.

Case No. 4:04cv399-RH/WCS

of important evidence violated substantive due process, and Petitioner argues that he was denied a fair trial. *Id.*, pp. 3-4. Petitioner has alleged a federal claim in this court.

A violation of a state rule of procedure or of a state law is not itself a violation of the federal constitution. Engle v. Isaac, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983) (procedural rule); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989) (sentencing guidelines); Carrizales v. Wainwright, 699 F.2d 1053, 1054-1055 (11th Cir. 1987) (jury instruction).

> Federal courts generally do not review a state court's admission of evidence in habeas corpus proceedings. We will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial. "A denial of fundamental fairness occurs whenever the improper evidence 'is material in the sense of a crucial, critical, highly significant factor.'"

Mills v. Singletary, 161 F.3d 1273, 1289 (11th Cir. 1998) *cert. denied,* 528 U.S. 1082 (2000) (citations omitted).

Petitioner has not identified the witness and he has not alleged here what the witness would have said. In ground four, however, Petitioner contends that on the night when Theresa Williams was stopped driving the blue Pontiac 6000, she told the police that she had been driving the car for a couple of hours, rather than the 45 minutes Hall said Williams had said. Petitioner contends that Yolanda Baker was present at the time, and heard Williams say this to the police. Petitioner contends he told his attorney about the evidence from Baker. It will be assumed, therefore, that the witness intended as the basis for ground one is Yolanda Baker.

In ruling on a related claim in Petitioner's Fla.R.Crim.P. 3.850 motion, the trial court pointed out that:

>the shooting of the victim occurred prior to 8:29 p.m. on May 1, 1997 (Exhibit L, TT, P. 100, lines 6-24), that Ms. Williams was stopped in the suspected Pontiac automobile at 12:30 a.m. May 2, 1997 (Exhibit M, TT. P. 109, lines 6-11), some four (4) hours after the shooting.  While there may be discrepancies in the testimony of the various witnesses, they are at best minor inconsistencies.

Doc. 10, ex. M, pp. 4-5.

This is true.  Even if Williams had had the car for a "couple of hours," she was stopped at 12:30 a.m., four hours or more after the shooting.  The only witness who gave Petitioner a complete alibi was his girlfriend, Davis, and the jury did not believe Davis.  Instead, the jury believed Byrd.  Byrd was shot in the chest from a distance of about five feet, and then he was shot in the face.  Byrd had an ample opportunity correctly to identify the person who shot him as he was facing the person from only five feet when the first shot was fired.  He had had several confrontations with Petitioner and Price over the preceding week, and there is no reason to believe that Byrd would be mistaken in his identification of Petitioner as his assailant.  There is no evidence that Byrd had any reason to falsely accuse Petitioner.  Testimony from Baker would not have been important to the outcome.  Consequently, Petitioner has not shown that "the evidence excluded [was] material in the sense of a crucial, critical, highly significant factor."  The claim, therefore, is facially insufficient.  Cf. Aldrich v. Wainwright, 777 F.2d 630, 636-37 (11th Cir.1985), *cert. denied*, 479 U.S. 918 (1986) (A defendant's conclusory allegations about the testimony of uncalled witnesses are insufficient to state a claim of ineffective assistance of counsel).  Ground one is without merit.

**Ground Two:**    **Whether Petitioner was denied due process when the trial court permitted evidence about another criminal case**

Petitioner contends that he was denied a fundamentally fair trial when the State presented evidence that he shot Willie James Byrd because Byrd had given evidence against Derrick James at a bond hearing for James. Petitioner argues that there was no evidence that he attended that bond hearing, and hence, it was improper for the jury to infer that he shot Byrd in retaliation for Byrd's evidence against James.

Respondent failed to address this claim. Doc. 10, pp. 15-16 (repeating the argument as to ground one).

The constitutional premise for this claim is exactly like the last one. To establish a violation of fundamental fairness, the evidence erroneously admitted or excluded at trial "must be material in the sense of a crucial, critical, highly significant factor." Mills v. Singletary, 161 F.3d at 1289 (citations omitted). Petitioner must show that he was denied a fundamentally fair trial by the admission of this evidence.

Petitioner has not done so. It did not matter that there was no evidence that Petitioner attended the Derrick James bond hearing. The playing of the audiotape in early April, 1997, at the bond hearing was the first time that it became publically known that Byrd had given evidence against James to the police. There was evidence that Petitioner was with his brother, Anthony Price, when Petitioner said they would get Byrd later. Just shortly before this, Price had accused Byrd of having "snitched" on James. There was no ambiguity in this evidence as to why Petitioner and Price wanted to harm Byrd. A week later, Petitioner shot Byrd, trying to kill him. The audiotape was very relevant. Petitioner was charged with retaliating against a witness with a firearm. The State had to prove that the motive for shooting Byrd was due to Byrd's testimony against James and had to explain why the shooting of Byrd did not take place until May

1, 1997, when Byrd gave evidence against James in December, 1996. Ground two is without merit.

**Ground Three:   Whether there was prosecutorial misconduct in violation of due process by calling a witness, Theresa Williams, a liar, and presenting false evidence from Sergeant Ezell Hall**

This claim faults the prosecution for calling Sergeant Hall as a rebuttal witness, to counter the testimony of Ms. Williams about the length of time she had possession of the blue Pontiac 6000. The portion of the closing argument challenged here is, as reported by Petitioner, the following:

> Ms. Davis may have been driving the car, . . . but it wasn't at the time of the crime, and Ms. Williams' lies are too evident, as well, from her testimony.

Doc. 6, p. 5A.

Prosecutorial argument does not constitute reversible error unless the argument renders the trial so fundamentally unfair as to amount to a denial of due process, or unless the statement so prejudices another specific constitutional right, such as the privilege against self-incrimination, as to amount to denial of that specific right. Donnelly v. DeChristoforo, 416 U.S. 637, 643-645, 94 S.Ct. 1868, 1871-1872, 40 L.Ed.2d 431 (1974). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different." United States v. Wilson, 149 F.3d 1298, 1301 (11th Cir. 1998) (citations omitted).

The argument here was commenting on the evidence. There was evidence that Williams had given two different versions as to how long she had been in possession of

the car when she was stopped at 12:30 in the morning. It was not improper to argue that Williams had lied.[3]

Petitioner also argues that the State knowingly elicited false testimony from Sergeant Hall, that Williams had earlier said she had had the car for only about an hour before she was stopped by the police.[4] Doc. 6, memorandum, p. 7. While it would have been permissible for Petitioner to argue to the jury that Sergeant Hall lied, Petitioner has no independent evidence of a lie save for the conflict in testimony between Hall, Davis, and Williams. The jury resolved the conflict in favor of the State. Ground three is without merit.

**Ground Four:** **Whether trial counsel was ineffective for failing to interview and call an important witness, Yolanda Baker**

Petitioner contends that on the night when Theresa Williams was stopped driving the blue Pontiac 6000, she told the police that she had been driving the car for a couple of hours. He contends that Yolanda Baker was present at the time, and heard Williams say this to the police. Petitioner contends he told his attorney about the evidence from Baker, and he contends that his attorney was ineffective for failing to call Baker to testify as to what she heard Williams tell the police.

---

[3] Petitioner cites Washington v. State, 687 So. 2d 279 (Fla. 2d DCA 1992) for the proposition that it is improper to argue that a witness is a liar. The comment in that case was "the *defense* in this case is nothing but a big lie." He also compared this to Joseph Goebbels, who favored big lies and argued that Jews should be "exterminated" because they were responsible for all that was wrong with the world. The case is obviously distinguishable from the case at bar. Here, the State did not argue that Petitioner and his counsel lied in their defense, or that their defense was a "big lie."

[4] *See*, Giglio v. United States, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) (the Government's knowing use of false testimony violates due process).

Case No. 4:04cv399-RH/WCS

Petitioner's trial attorney could not have called Baker as a witness in the defense's case in chief because her testimony, what she heard Hall say, was hearsay. It would have been offered for the truth of what Hall had said about the length of time she had possession of the car prior to the stop. The trial court so ruled when it denied this claim as presented in Petitioner's Fla.R.Crim.P. 3.850 motion. Doc. 10, ex. M, p. 4.

Petitioner's attorney tried to call a witness[5] in surrebuttal, to counter the rebuttal evidence of Hall, but the court refused to let him. That was a discretionary decision by the trial court.[6] Petitioner has not shown what more his attorney could have done to get Baker's evidence in. Ground four is without merit.

**Ground Five:**   **Whether there was a denial of due process and ineffective assistance of counsel as to a sentencing error**

Petitioner argues that his attorney was ineffective as to sentencing because there was an error in sentencing. Doc. 6, memorandum, pp. 10-11. He also mentions due process, but does not explain that claim and it will not be addressed. Respondent concedes exhaustion of state court remedies as to the ineffective assistance of counsel claim.

The sentencing error alleged is that FLA. STAT. § 921.0013 provides that a felony of the first degree punishable by life is to be ranked at offense level 9 in severity. Doc.

---

[5] It was assumed in the discussion of ground one that Baker was the witness that counsel had in mind when he sought to put on surrebuttal evidence.

[6] "[T]he admissibility of a prior consistent statement to rehabilitate a witness who has been impeached with a prior inconsistent statement is a matter that is within the discretion of the trial judge." Monday v. State, 792 So. 2d 1278, 1282 (Fla. 1st DCA 2001).

Case No. 4:04cv399-RH/WCS

6, memorandum, p. 10.  Petitioner argues that it was error to rank the severity of his offense at offense level 10.  *Id.*, p. 11.

The transcript of the Rule 3.850 hearing contains a lengthy discussion about whether the offense level should have been 9 or 10.  Doc. 10, ex. K.  Counsel for Petitioner argued that under the 1994 sentencing guidelines, his offense of attempted premeditated murder was an offense level 9.  *Id.*, p. 7.  The State countered that it was listed as level 9, but it became a level ten when the firearm was added.  *Id.*  The trial court explained that Petitioner had originally been sentenced to 20 years in prison on attempted first degree murder, but that sentence had been vacated because it was an habitual felony offender (HFO) sentence.  *Id.*, p. 4.  The State argued that the habitual offender sentence could not stand because Petitioner had successfully argued that he had been convicted of a life felony.  *Id.*, p. 5.  The State argued that if the attempted first degree murder was to be rated at offense level 9, then it would not be punishable by a life sentence; if that occurred, then Petitioner would be eligible for an habitual offender sentence.  *Id.*, p. 9.  The State further argued:

> Judge, under the statute, attempted first degree murder with a firearm is a level ten offense.  I don't know where the defendant – who prepared his motion for him and told him it was a level nine offense, but it's not, it's a level ten, and that's worth 116 points. . . .

*Id.*, p. 6.

The trial court found, without explanation, that the sentencing enhancement was correct and error of counsel had not been shown.  Doc. 10, ex. M, pp. 3 and 5.  Respondent argues that this ruling was proper, but fails to explain why.  Nonetheless, Petitioner has failed to show that there was a different argument his attorney could have

made at sentencing. Accordingly, he has failed to show attorney error or prejudice to the outcome and ground five fails.

Accordingly, it is **RECOMMENDED** that petition for writ of habeas corpus filed by Odell Bush pursuant to 28 U.S.C. § 2254 challenging his conviction for attempted first degree murder with a firearm, retaliating against a witness with a firearm, shooting into an occupied vehicle, and possession of a firearm by a convicted felon in the Circuit Court of the Judicial Circuit, in and for Leon County, Florida, case number 97-335-CFA, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on September 26, 2005.

s/ William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**